WILLIAM B. RICHARDSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8596–76.     Filed August 9, 1979.

William B. Richardson, pro se.
*Donald Howser* and *Michael A. Yost, Jr.,* for the respondent.

WILBUR, *Judge:* Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows:

| Year | Deficiency | Additions to tax | |
|---|---|---|---|
| | | *Sec. 6651(a)*[1] | *Sec. 6653(a)* |
| 1971 | $1,531.25 | $229.88 | $76.56 |
| 1972 | 1,948.86 | 286.34 | 97.44 |
| 1973 | 2,198.82 | 320.70 | 109.94 |
| 1974 | 2,340.21 | 336.73 | 117.01 |

Petitioner assails the deficiencies by arguing that the Government's alleged violation of the fiscal accounting requirement contained in article I, section 9, clause 7, of the U.S. Constitution has resulted in violations of his constitutional rights under the 4th, 5th, 9th, and 10th Amendments to the Constitution, thereby justifying his refusal to file tax returns or pay income taxes. Other issues raised for our decision are whether the documents filed by petitioner for taxable year 1971 constitute a return so that the statute of limitations contained in section 6501(a) precludes respondent from assessing and collecting a deficiency for that year; whether respondent properly calculated petitioner's tax liability for 1971 through 1974; and whether petitioner is liable for additions to tax under section 6651(a).

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner William B. Richardson resided in Greensburg, Pa., at the time he filed his petition in this case.

During the taxable years 1971 through 1974, petitioner was married and was employed with the Office of the Public Defender, County of Westmoreland. He received wages and had Federal income taxes withheld therefrom for the years involved, as follows:

|  | 1971 | 1972 | 1973 | 1974 |
|---|---|---|---|---|
| Wages | $7,497.20 | $9,356.01 | $10,244.83 | $10,686.62 |
| Amounts withheld | 611.72 | 803.52 | 916.03 | 993.31 |

Petitioner also had gross income of $485.28 per year in 1971, 1972, and 1973 from the rental of a farm he owned near Gate City, Va.

Petitioner did not file Federal income tax returns (Forms 1040) for taxable years 1972, 1973, or 1974. In April of 1972, petitioner mailed to respondent an unexecuted Form 1040 for the year 1971, which showed petitioner's name, address, and social security number, claimed dependency exemptions for petitioner's three children, and reported wages of $7,497.20. The Form 1040 referenced an attached letter which expressed petitioner's view that "The People's right to * * * an accounting of government appropriations, expenditures, and receipts [pursuant to U.S. Const. art. I, sec. 9, cl. 7] has been usurped by an elaborate scheme of budget manipulations, underhanded transfers between agencies and heads of appropriation, and downright fraudulent reporting on the part of the Treasury," and which stated that petitioner would not support "a system that downgrades me by devious means when I am a protagonist of undeniable constitutional precepts or a system that falsifies and complicates the only accounting system by which I could hope to check on the disbursement of tax revenue broadcast all over the world by unknown people representing unknown agencies with unlimited spending authority and no accountability." At the conclusion of the letter, petitioner demanded that respondent return the amounts withheld for the payment of income taxes from the wages petitioner had earned during 1971.

Under date of June 18, 1976, respondent sent petitioner a statutory notice of deficiency determining deficiencies and

additions to tax as previously set forth. The statement attached to the notice of deficiency shows that respondent first determined petitioner's gross income for each of the 4 years at issue as comprised of wages, rent from a brick house located at Wise, Va., and rent from the Gate City, Va., farm, allowed a standard deduction and one personal exemption, and then calculated the deficiencies by applying the tax rates applicable to married taxpayers filing separate returns. The statement explains the additions to tax as being made under section 6651(a) for failure to file income tax returns for each year at issue and under section 6653(a) because of a determination that part of the underpayment of tax for each year was due to negligence or intentional disregard of rules and regulations.

Petitioner has not contested the imposition of the addition to tax under section 6653(a).

OPINION

Petitioner maintains that he should not be required to file a return or pay any deficiency in tax because, both during the taxable years at issue and currently, the Government engaged in unconstitutional and criminal conduct. More specifically, petitioner argues that while the intelligence community, particularly the Central Intelligence Agency (CIA), may have authority under the Central Intelligence Agency Act of 1949, ch. 227, 63 Stat. 208, 50 U.S.C. sec. 403(a) et seq., to have their personnel and operational expenditures charged against the appropriations of other Government agencies, this authority becomes illegal and criminal because the Treasury accepts a transfer showing on its face an expenditure of the donor agency while the CIA is the true recipient of the funds. According to petitioner, these are "fraudulent" transfers which, when reflected in the Treasury's annual report, result in a violation of the "regular Statement and Account" clause of the Constitution, art. I, sec. 9, cl. 7. In view of this alleged constitutional violation, petitioner asserts that there is no enforceable tax authority and that not only need he not file tax returns nor pay taxes but he is also entitled to have his salary deductions returned to him.

The initial question is whether petitioner has standing to raise

this constitutional question in defense of his failure to file tax returns or pay income taxes.[2] The United States Supreme Court has determined that petitioner has no standing as a taxpayer to raise directly the issue of the constitutionality of the Central Intelligence Agency Act of 1949. *United States v. Richardson*, 418 U.S. 166 (1974). In the case before us, petitioner does not directly assail the constitutionality of a particular statute but, rather, argues that the Government's fiscal disbursement and accounting system has deteriorated to such an extent that he is exonerated from paying taxes. In that regard, this case is similar to *Egnal v. Commissioner*, 65 T.C. 255 (1975), in which we recognized that where a demand is made directly upon a petitioner, in the form of a claim for taxes, he has standing in the narrow sense of being able to establish a "logical link" between his status as a taxpayer and the type of governmental action attacked. *Flast v. Cohen*, 392 U.S. 83, 102 (1968); *Egnal v. Commissioner, supra* at 257, and cases cited therein.

However, petitioner must also establish that he has standing in the broader sense of that term, described as the "second nexus" in *Flast v. Cohen, supra* at 102–103, as follows:

Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the power delegated to Congress by Art. I, §8.

Petitioner fails to meet this requirement. Petitioner has alleged that appropriated funds are being spent in violation of a "specific constitutional limitation imposed upon the * * * taxing and spending power," namely the Statement and Account clause. However, this clause appears to be a limitation on the power of the Executive Branch (see *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)), and not a restriction on Congress in exercising its taxing and spending power. This conclusion is supported by the following statement of the United States Supreme Court:

Although we need not reach or decide precisely what is meant by "a regular Statement and Account," it is clear that Congress has plenary power to exact

---

[2] A thorough discussion of the application of the standing concept to cases before the Tax Court is set forth in *Anthony v. Commissioner*, 66 T.C. 367 (1976).

any reporting and accounting it considers appropriate in the public interest. It is therefore open to serious question whether the Framers of the Constitution ever imagined that general directives to the Congress or the Executive would be subject to enforcement by an individual citizen. While the available evidence is neither qualitatively nor quantitatively conclusive, historical analysis of the genesis of cl. 7 suggests that it was intended to permit some degree of secrecy of governmental operations. The ultimate weapon of enforcement available to the Congress would, of course, be the "power of the purse." Independent of the statute here challenged by respondent, [petitioner in this case] Congress could grant standing to taxpayers or citizens, or both, limited, of course, by the "cases" and "controversies" provisions of Art. III.

Not controlling, but surely not unimportant, are nearly two centuries of acceptance of a reading of cl. 7 as vesting in Congress plenary power to spell out the details of precisely when and with what specificity Executive agencies must report the expenditure of appropriated funds and to exempt certain secret activities from comprehensive public reporting. [*United States v. Richardson, supra* at 178 n. 11; citations omitted.]

Accordingly, petitioner's constitutional argument is not cognizable before this Court.

Petitioner claims that the assessment and collection of a deficiency in income tax for taxable year 1971 are barred by the statute of limitations under section 6501(a).[3] Respondent contends that petitioner failed to file a valid return for 1971 and therefore, the income tax deficiency for that year may be assessed at any time under section 6501(c)(3).[4] Respondent is clearly correct.

In April 1972, petitioner mailed to respondent an unexecuted Form 1040, described more fully in our findings of fact. It is well established that the filing of an unsigned return form is not the filing of a return and does not start the running of the statute of limitations against respondent. *Reaves v. Commissioner*, 31 T.C. 690 (1958), affd. 295 F.2d 336 (5th Cir. 1961); *Vaira v. Commissioner*, 52 T.C. 986 (1969), revd. on other grounds 444 F.2d 770 (3d Cir. 1971); *Doll v. Commissioner*, 358 F.2d 713 (3d

---

[3]SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(a) GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

[4]Sec. 6501(c) provides, in pertinent part:

SEC. 6501(c). EXCEPTIONS.—

* * * * * * *

(3) No RETURN.—In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

Cir. 1966), affg. per curiam a Memorandum Opinion of this Court; *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245 (1930). Nor can the signature on the letter attached to the return be considered an imputed signature on the return itself. Cf. *Vaira v. Commissioner, supra; Brafman v. United States,* 384 F.2d 863, 868 (5th Cir. 1967).

We therefore conclude that the assessment against petitioner of any income tax deficiency for the taxable year 1971 was not barred by the statute of limitations contained in section 6501(a) on June 18, 1976, when respondent issued the notice of deficiency.

In his petition, petitioner contests the method by which respondent calculated petitioner's tax liability for taxable years 1971 through 1974. The parties have stipulated that respondent's calculation of petitioner's gross income properly included petitioner's wages for all 4 years and income from the rental of a farm for 1971, 1972, and 1973. The statutory notice of deficiency shows that respondent also included in petitioner's gross income for taxable year 1974 income allegedly received by petitioner from the rental of the farm during that year and included income allegedly received by petitioner from the rental of the brick house during 1971, 1972, 1973, and 1974 in petitioner's gross income for each of those taxable years.

During the trial, petitioner testified that he had sold the brick house during 1971 and had received no rental income from the house during any of the taxable years at issue. Petitioner also testified that he received no rent from the farm in 1974 and, in fact, had been forced to evict a tenant who had been occupying the premises unbeknownst to petitioner. We found petitioner to be an honest, forthright individual whose testimony was eminently credible. Accordingly, we find that petitioner did not receive income from the rental of the brick house during 1971, 1972, 1973, or 1974, or income from the rental of the farm during 1974.

Consequently, the only remaining issues relating to respondent's computation of the income tax deficiencies relate to whether petitioner was entitled to claim itemized deductions, whether he could properly claim dependency exemptions for all of his children, and whether he can now elect to file a joint return for any of the taxable years in issue.

In his petition, petitioner alleges that respondent erred in

calculating the tax due by allowing only the standard deduction because "there may be other deductions available which would be more advantageous to the petitioner." At the trial, petitioner proffered no evidence of entitlement to any itemized deductions.[5] Accordingly, we view this issue as having been abandoned by petitioner.

Petitioner also claims entitlement to section 151(e) dependency exemptions as follows: three for 1971 and 1972 and two for 1973 and 1974. Petitioner testified at length about the claimed dependents, his children. This testimony shows that the oldest child, whom petitioner claims as a dependent for 1971 and 1972, attended college on the G.I. Bill of Rights during those years. He was 26 years old in 1971. The middle child was 22 years old in 1971 and attended school from 1971 through June 1974, when she went to work in India. The youngest child, who was 17 years old in 1971, attended school on a full-time basis during all 4 years in issue. Petitioner introduced no evidence as to the total expenses for support of the oldest child during 1971 or 1972 or for the middle child during 1974, nor what portion of those expenses petitioner paid. Accordingly, based on the evidence presented, we find that petitioner is only entitled to two dependency exemptions for each of the taxable years 1971, 1972, and 1973, and to one dependency exemption for taxable year 1974.

On the Form 1040 filed for taxable year 1971, petitioner claimed entitlement to four exemptions: one for himself and three for his children. At trial, petitioner appears to have claimed entitlement to an additional exemption for his spouse. It is not clear from the record whether petitioner is claiming the additional exemption under section 151(b) or because he believes he may still elect to file a joint return with his spouse. In either event, the additional exemption is not allowable.

Section 151(b), in general, allows a taxpayer to deduct an "additional exemption" for his spouse in a taxable year when the taxpayer and his spouse do not make a joint return, if the spouse has no gross income and is not the dependent of another taxpayer. Although petitioner meets the first requirement, i.e.,

---

[5]Petitioner did testify regarding expenses he incurred incident to the 1971 sale of the brick house. These selling expenses would have been properly treated for income tax purposes as an offset in computing the gain realized by petitioner on the sale (*Chapin v. Commissioner,* 12 T.C. 235, 238 (1949), affd. 180 F.2d 140 (8th Cir. 1950)); they are not independently deductible.

he and his spouse did not file a joint return for any of the taxable years at issue, he has not established that his spouse had no gross income in 1971, 1972, 1973, or 1974. Therefore the deduction allowed under section 151(b) is not available to petitioner for any of those taxable years.

Furthermore, petitioner may not claim the additional exemption by virtue of now filing a joint return with his wife for 1971, 1972, 1973, or 1974. Section 6013(b) provides, in pertinent part, as follows:

SEC. 6013(b). JOINT RETURN AFTER FILING SEPARATE RETURN.—

(1) IN GENERAL.—Except as provided in paragraph (2), if an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year. * * *

(2) LIMITATIONS FOR MAKING OF ELECTION.—The election provided for in paragraph (1) may not be made—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(C) after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed in section 6213 * * *

Petitioner comes squarely within this limitation and, therefore, is not entitled to now elect to file a joint income tax return.

Similarly, section 6013(b)(2)(C) is dispositive of petitioner's argument that respondent erred in applying the tax rates applicable to married taxpayers filing separate tax returns in lieu of the rates applicable to married taxpayers filing joint returns.

The final issue for our decision is whether respondent properly imposed the addition to tax under section 6651(a)(1). Section 6651(a)(1)[6] imposes an addition to the tax if a taxpayer fails to file his tax return on or before the prescribed date, unless the

---

[6]SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX.

(a) ADDITION TO THE TAX.—In case of failure—

(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or

failure is due to reasonable cause and not due to willful neglect. For each month the return has not been filed, the additional tax is 5 percent of the amount of the tax required to be shown on such return, with a maximum additional tax of 25 percent of such amount.

Concerning taxable year 1971, petitioner contends that the imposition of the addition to the tax is improper because he did file a return for that year. This contention is without merit since the unsigned Form 1040 filed by petitioner for the taxable year 1971 does not constitute an income tax return.

Petitioner also asserts in his petition that his failure to file tax returns for any of the taxable years at issue was due to reasonable cause. The burden of proof is on petitioner to establish that reasonable cause existed for failing to file his returns when due. *Bebb v. Commissioner*, 36 T.C. 170 (1961). Although petitioner has not elaborated his assertion on brief, it is apparent that his failure to file tax returns was based on the good faith belief that the proper filing of returns and the payment of income taxes would foster and exacerbate the alleged unconstitutional activity of the Treasury Department. There is no question as to the sincerity of petitioner's belief. However, his failure to file tax returns cannot be considered as being due to reasonable cause within the meaning of section 6651(a) merely because he objects to the Treasury Department's oversight of Federal expenditures. Cf. *Muste v. Commissioner*, 36 T.C. 913 (1961); *Hatfield v. Commissioner*, 68 T.C. 895 (1977). Respondent properly imposed the section 6651(a) addition to tax for each year.

*Decision will be entered under Rule 155.*

fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate
* * *